**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **L.G.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-880-PRW** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED AND REMANDED.**

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-28).

The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2023, the alleged onset date. (TR. 20). At step two, the ALJ determined Plaintiff suffered from the following severe impairments: bipolar disorder; generalized anxiety disorder; attention deficit hyperactivity disorder; and post-traumatic stress disorder. (TR. 20). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels, but with the following non-exertional functional limitations: understand, recall, and perform simple repetitive tasks; unable to interact appropriately or tolerate contact with the public; adapt to no more than occasional changes in work processes and environment; cannot tolerate work traditionally known or classified as fast pace, production pace, assembly line pace type work; cannot tolerate strict production or performance quotas, such as a job wherein the employer sets a very strict pace of work from which cannot be varied, such as having to complete 1/16th of one's assigned day's work every half hour, rather can perform jobs wherein the claimant can vary pace of work over the course of the workday or workweek (i.e., speed up or slow down the pace of work), albeit that all assigned work is completed by the end of the workday or workweek, whichever is applicable; and, at the end of the workday or workweek whichever is applicable, would have a

> reduction in overall production, including error rate, of about 10% less than that of the average employee.

(TR. 22-23).

Additionally, at step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (TR. 26). However, the ALJ presented the RFC limitations to a vocational expert (VE) in the form of several hypothetical scenarios to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 48-53). Given the RFC limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 50). At step five, the ALJ adopted the VE's testimony and concluded that Plaintiff was not disabled based on her ability to perform the identified jobs. (TR. 27-28).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ failed to: (1) consider Plaintiff's depression and the impact thereof on the RFC; (2) provide a proper explanation in support of a portion of the RFC findings; (3) properly evaluate a medical opinion; and (4) develop the record. (ECF No. 8).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t]

evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE ALJ'S FAILURE TO PROPERLY CONSIDER PLAINTIFF'S DEPRESSION

Plaintiff alleges that the ALJ overlooked evidence of her depression and failed to consider the effect thereof when formulating the RFC. (ECF No. 8:17-23). Plaintiff is correct.

### A. Evidence of Plaintiff's Depression

Plaintiff states that her depression has been her "longest-standing impairment[], dating back to adolescence." (ECF No. 8:3).

On March 4, 2024 and October 6, 2023, State Agency psychologists Joan Holloway and Lisa Swisher found that Plaintiff's depression was considered her primary medically determinable impairment and that it was considered "severe." (TR. 60, 69, 78, 87). On June 7, 2023, and in follow up appointments, Northcare Mental Health Center (Northcare) provider Meghan Harrison diagnosed Plaintiff with unspecified depressive disorder. (TR.

397, 398, 400, 402). On August 1, 2023, another Northcare provider Halie Ransom, LPC, evaluated Plaintiff, noting that her main concern was severe anxiety and depression. (TR. 382). Plaintiff reported feeling severely depressed "[m]ore than half the days" in the past 30 days and that the depression lasts "[a]ll day." (TR. 382). According to Plaintiff, the depression exhibits itself in tearfulness, loss of interest and pleasure, thoughts of worthless and hopelessness, fatigue, problems with concentrating, psychomotor slowing, . . . [and] thoughts of suicide more often that not." (TR. 383). Ms. Ransom formulated a treatment plan to specifically treat Plaintiff's anxiety and depression which included medication and therapy. (TR. 393-396). On August 17, 2023, after Plaintiff reported that her depression was "pretty bad," Advanced Practice Registered Nurse Sue Rollins agreed, noting that Plaintiff was exhibiting symptoms of depression and suggested increasing Plaintiff's Effexor; a plan to which Plaintiff agreed. (TR. 409-413).

On October 6, 2023, State Agency psychologist Theresa Horton performed a diagnostic interview and mental status examination on Plaintiff. (TR. 418-422). Plaintiff reported her depression beginning as a child and sometimes her depression symptoms do not remit for two months. (TR. 419). Ultimately, Dr. Horton described Plaintiff's mood as depressed concluded that Plaintiffs' symptoms "meet criteria for recurring depressive episodes and occur for at least two week period." (TR. 420, 422). Dr. Horton's diagnosis was "Bipolar Disorder, Type I, currently depressed, Moderate." (TR. 422).

On February 22, 2024, Plaintiff was assessed by LPC Akemi Malgonkar. (TR. 425-438). Ultimately, Mr. Malgonkar stated that Plaintiff's emotional stressors causing depression occurred approximately 70% of the time, her depression and anxiety were

"full blown," and diagnosed her with Generalized Anxiety Disorder, Post-Traumatic Stress Syndrome, Bipolar II Disorder, and Attention Deficit Hyperactivity Disorder. (TR. 438, 442).

On March 6, 2024, Claire Nash at Northcare assessed Plaintiff, who had noted suffering from depression nearly every day in the past 30 days, which usually lasted half the day. (TR. 467). According to Plaintiff, her depression was "bad" with "suicidal ideation," exhibited by crying constantly and not wanting to do anything. (TR. 468). Within the diagnosis of Bipolar II, Ms. Nash characterized Plaintiff's depression as moderate. (TR. 475). On May 8, 2024, Plaintiff reported "significant" depression, stating she is overwhelmingly sad all the time. (TR. 488).

**B. The ALJ's Decision**

As noted, the ALJ stated that Plaintiff suffered from "severe" bipolar disorder. (TR. 20). Technically, this finding reflects the depression and is in line with the diagnoses of Bipolar, *see supra*, which includes episodes of both mania and depression.[1] In discussing the various medical evidence, the ALJ acknowledges Plaintiff's depression, but appears to dismiss it. For example, in discussing the Northcare records, the ALJ states: "Although [Plaintiff] was depressed and anxious, the remaining exam was essentially normal." (TR. 24). This was the same examination where Plaintiff complained that her depression was pretty bad and her treatment provider increased her Effexor. *See supra*.

---

[1] *See* https://www.mayoclinic.org/diseases-conditions/bipolar-disporder/symptoms-causes/syc-20355955 (last visited Sept. 3, 2026).

In discussing Dr. Horton's report, the ALJ stated: "Although [Plaintiff] was anxious and depressed, she rated her mood at a 6 or 7[.]" (TR 24). This was the same report wherein Dr. Horton described Plaintiff's mood as depressed concluded that Plaintiffs' symptoms "meet criteria for recurring depressive episodes and occur for at least two week period." (TR. 420, 422). The ALJ did not discuss this portion of the report. *See* TR. 25-26. For the portions of the opinion the ALJ does discuss, he states: "the residual functional capacity above limits the clamant to only occasional changes; no fast pace, no strict quotas, and allows for off task/errors. This is consistent with the medical evidence of record in particular relatively normal mental status exams **except for mood being anxious and depressed**." (TR. 26) (emphasis added).

**C. Error in the ALJ's Decision**

Plaintiff argues that the ALJ failed to properly consider her depression when formulating the RFC. *See supra*. The Court should agree.

The statute, case law, and regulations require the ALJ to evaluate all of the non-severe impairments along with the severe impairment, singly and in combination, throughout the disability evaluation. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1445(e); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination.... [T]he failure to consider all of the impairments is reversible error."); *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir. 2003) ("While ... the mere diagnosis of an impairment does not necessarily compel a finding of disability, the regulations do require the ALJ to

at least consider a demonstrated impairment throughout the disability determination process.”).

Here, the ALJ acknowledged that Plaintiff suffered from severe Bipolar disorder, which arguably and technically could include/account for Plaintiff’s depression. *See supra*. But the ALJ’s decision is severely lacking in any discussion regarding the effects of said depression; and in fact appears to acknowledge the deficiency by specifically pointing out that Plaintiff’s depression was not accounted for (in evaluating Dr. Horton’s report, for example). *See supra*. The ALJ was required to discuss the effect of Plaintiff’s depression on her ability to work in light of her allegations regarding the same and various medical opinions. *See supra*. The error is especially egregious considering Plaintiff reported and healthcare providers confirmed that the depression was so severe it could last up to weeks at a time and the ALJ acknowledged that if an employee was absent more than two days per month, they would likely be terminated. *See supra*; TR. 53. The Court should remand the case for further discussion of Plaintiff’s depression and its effects on the RFC as statutorily required.

## VI. PLAINTIFF’S REMAINING ALLEGATIONS OF ERROR

Plaintiff also argues that the ALJ failed to: (1) provide a proper explanation in support of a portion of the RFC findings; (2) properly evaluate a medical opinion; and (3) develop the record. (ECF No. 8). The Court should decline consideration of these alleged errors because they may be affected following a remand for further evaluation of Plaintiff’s depression. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003)

("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VII. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be **REVERSED AND REMANDED**.

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **September 18, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VIII. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on September 4, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE